**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CRYSTAL STARNES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 17-1304 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| COURT OF COMMON PLEAS | ) | |
| OF BUTLER COUNTY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

Pending before the Court is Defendant Court of Common Pleas of Butler County's ("Court of Common Pleas") and Defendant Thomas Holman's ("Holman" collectively with Court of Common Pleas, "Court Defendants") Motion to Dismiss (Doc. 22) and Defendant Thomas Doerr's ("Judge Doerr" or "Doerr," with Court Defendants, "Defendants") Motion to Dismiss (Doc. 25).

For the following reasons, Defendants' Motions to Dismiss will be **GRANTED** in part and **DENIED** in part. Plaintiff's Fourteenth Amendment Gender Discrimination claim will be dismissed without prejudice to the extent that Plaintiff claims that Doerr's discrete discriminatory acts form the basis of it; Plaintiff's Procedural Due Process claim will be dismissed with prejudice. Defendants' Motions to Dismiss will be **DENIED** as to all remaining claims.

**BACKGROUND**

Plaintiff brings this § 1983 action against the Court of Common Pleas and Judge Doerr and Holman in their individual capacity. <u>See generally</u>, Second Amended Complaint ("SAC") (Doc. 20). In relevant part, Plaintiff alleges the following, which, for the purposes of the Motions to Dismiss, are accepted as true: Since 2005, Plaintiff has worked as a probation officer for the Court of Common Pleas. <u>Id.</u>, at ¶ 9. In December 2004, Plaintiff met Doerr at a Christmas party. <u>Id.</u>, at ¶ 10. At the Christmas party, Doerr flirted with Plaintiff, commented on her attractiveness and suggested that they should stay in touch. <u>Id.</u>, at ¶ 13. Doerr and Plaintiff eventually exchanged cell phone numbers. <u>Id.</u>

Doerr called Plaintiff numerous times after the party requesting that they meet. <u>Id.</u>, at ¶ 14. He invited Plaintiff to "visit him or meet him at his chambers." <u>Id.</u> Initially, Plaintiff declined Doerr's invitations. <u>Id.</u> In February 2005, however, Doerr finally persuaded Plaintiff to meet him in his chambers. <u>Id.</u>, at ¶ 15. After Plaintiff entered Doerr's chambers, Doerr began kissing Plaintiff and insisted that they engage in sexual intercourse. <u>Id.</u> Although Plaintiff insists that the sexual intercourse was not welcome, she did engage in sexual intercourse with him. <u>Id.</u>, at ¶ 16. Following the intercourse, Doerr commented that their sexual interactions would be a "business relationship." <u>Id.</u>, at ¶ 16-17.

In the summer of 2005, a job became available in the probation office at the court. <u>Id.</u>, at ¶ 19. "Doerr took complete control of the hiring process and ensured that Plaintiff was hired." <u>Id.</u> After starting the new job, Doerr began to summon Plaintiff to his chambers for sexual relations. <u>Id.</u>, at ¶ 21. Additionally, Doerr often would share pornography with Plaintiff and discuss sex on the telephone. <u>Id.</u>, at ¶ 23. The sexual relationship continued for approximately

four years after the probation office hired Plaintiff.  <u>Id.</u>, at ¶ 24.  After the sexual relationship

ended, Doerr continued to influence and control Plaintiff.  <u>Id.</u>, at ¶ 26.  Among other things,

Doerr's conduct—after the sexual relationship  ended—included:

- Requesting that Plaintiff film herself performing sexual acts, <u>Id.</u>, at ¶ 26;

- Demanding that that the two interact in a normal manner, despite their previous sexual relationship, <u>Id.</u>, at ¶ 31;

- Using his position to force Plaintiff's continued interaction with him by assigning her duties that required her to be in his court, <u>Id.</u>;

- Telling Plaintiff that judges were unhappy with her using a standardized order despite Plaintiff never receiving a complaint regarding her use of this order, <u>Id.</u>, at ¶ 36;

- Making Plaintiff feel uncomfortable, forcing social interactions, singling her out and "looking her over," <u>Id.</u>, at ¶ 40;

- Loudly announcing Plaintiff's presence in court and coyly waiving at her from behind his computer while on the bench, <u>Id.</u>;

- Holding Plaintiff's hand while explaining that he could help her return to her previous job, <u>Id.</u>, at ¶ 44; and

- Interrupting Plaintiff while she was speaking with male staff, <u>Id.</u>, at ¶ 70.

In 2010—after the sexual relationship concluded—Plaintiff began dating her now

husband.  <u>Id.</u>, at ¶ 33.  Doerr and the administration for the Court of Common Pleas subjected

Plaintiff's husband to harassment, which caused Plaintiff's husband to develop anxiety and

eventually retire from his job after an extended paid leave.  <u>Id.</u>, at ¶ 34.

In 2014, Plaintiff asked Doerr to transfer her to the Butler County Domestic Relations

Office, and he obliged.  <u>Id.</u>, at ¶ 41.  Plaintiff quickly regretted her decision and "advised the

administration that she wished to return to the Probation Office."  <u>Id.</u>, at ¶ 42.   Butler County

personnel policies allow employees to return to their previous position as a matter of right within

30 days.  <u>Id.</u>, at ¶ 43.  But Holman told Plaintiff that she could not return to her previous position

and that Doerr would not allow her to return. Id., at ¶ 44. Holman stated that Plaintiff would "have to sue the Judge" to get her previous job back. Id. In the end, Doerr agreed to allow Plaintiff to return, but insisted that Plaintiff sign a general release waiving all claims against the Court of Common Pleas. Id., at ¶ 46, 49. Plaintiff was represented by counsel during the release's execution. Id., at ¶ 47.

After executing the release, Plaintiff returned to work as a probation officer in domestic relations. Id., at ¶ 55. Upon her return, Plaintiff was not treated the same as other employees in the domestic relations unit: Plaintiff was denied her own office; she was physically isolated from other probation officers and e-mails of general circulation were not provided to her; she was given a different allotment of uniforms; she was fingerprinted multiple times without explanation; she was restricted from going out in the field to supervise probation officers; and she did not earn overtime or "comp time." Id., at ¶ 56, 57.

Plaintiff claims that her relationship with Doerr spurred the differential treatment she received at work. To substantiate her theory, Plaintiff submitted numerous right-to- know requests. Id., at ¶ 59. Her rejection from on-call duty, along with the information she learned from the right-to-know requests, made Plaintiff believe that her employer was discriminating and retaliating against her. Id., at ¶ 60-61. Subsequently, Plaintiff contacted the EEOC and indicated her intent to file a discrimination charge in February 2016 and advised her supervisors of the same. Id., at ¶ 62, 63. After advising her supervisors of her intent to file a discrimination charge, Plaintiff was placed on a performance improvement plan. Id., at ¶ 64. Further, to cover their discriminatory conduct, Holman and Doerr created a policy that precluded probation officers assigned to the domestic relations office from being eligible for on-call duty. Id., at ¶ 65. They then backdated this policy to make it look like the policy took effect in 2013. Id.

On these facts, Plaintiff asserts claims under Title VII, alleging discrimination, hostile

work environment and retaliation.  See Count I.  Plaintiff also alleges claims under the First and

Fourteenth Amendment, alleging violations of the Fourteenth Amendment Equal Protection

Clause, the Fourteenth Amendment Due Process Clause and the First Amendment.  See Counts

II-V.

## ANALYSIS[1]

### I.      Contractual Waiver of Rights/ Release

As an initial matter, the Court finds Defendants' argument—that Plaintiff contracted

away her right to bring suit—premature.  A "[r]elease is an affirmative defense."  PPG Indus. v.

Generon IGS, Inc., 760 F. Supp. 2d 520, 525 (W.D. Pa. 2011).   "[T]he law of this Circuit (the

so-called 'Third Circuit Rule') permits an affirmative defense to be raised by a motion under

Rule 12(b)(6) in certain circumstances."  PPG Indus., 760 F. Supp. 2d at 525.  Generally, a

district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings,

unless the document is "undisputedly authentic" and "integral to or explicitly relied upon in the

complaint."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997).

Plaintiff argues that the Court should not consider the release because Plaintiff did not

attach it to her Complaint.   Doc. 34 at 16.  Plaintiff, however, relied upon the release in the SAC

---

[1] In deciding whether to grant a motion to dismiss under Federal Rule of Civil Procedure
12(b)(6), the court must take as true all of the well-pleaded facts in the complaint, Fowler v.
UPMC Shadyside, 578 F.3d 201, 211 (3d Cir. 2009), and determine whether these facts raise a
reasonable expectation that discovery will reveal the evidence necessary to prove each element
of plaintiff's claims. Thompson v. Real Estate Mortgage Network, 748 F.3d 142, 147 (3d Cir.
2014).

(See e.g., Compl. at ¶ 46); accordingly, the Court may consider it for the purposes of deciding a motion to dismiss.[2]

Although the Court may consider the release at this juncture, the Court finds that it does not preclude Plaintiff's claims. Whether Plaintiff waived her claims through a release requires the Court to inquire into the "totality of the circumstances" surrounding the agreement's execution to determine if Plaintiff knowingly and willingly executed the release. Coventry v. United States Steel Corp., 856 F.2d 514, 522-524 (3d Cir.1988), superseded by statute on other grounds. This inquiry considers the following factors:

> 1) the plaintiff's education and business experience, 2) the amount of the time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

Cirillo v. Arco Chem. Co., 862 F.2d 448, 451 (3d Cir.1988). Indeed, the above-mentioned factors require the Court to dive into the circumstances surrounding Plaintiff's execution of the release in addition to the release itself. At the very least, Plaintiff's allegations that she was already entitled to return to her previous job and that she never executed the release impedes the Court from ruling that the release bars Plaintiff's claim. Compl., at ¶¶ 43, 44, 54. Accordingly, the Court finds it premature to preclude any of Plaintiff's claims based on the release.

---

[2] In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record and documents that form the basis of a claim. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993). A document forms the basis of a claim if the document is "integral to or explicitly relied upon in the complaint." Burlington Coat Factory, 114 F.3d at 1426 (emphasis omitted). Plaintiff alleges that Doerr induced her into entering the release to shield himself against future suit for discrimination, creating a hostile work environment and his other constitutional transgressions. Thus, the release is integral to Plaintiff's SAC.

## II.    Statute of Limitations

Similarly, Defendants' statute of limitations arguments are unavailing.  Doc. 23 at 11-12; Doc. 26 at 14, 16.  Like a release, the "statute of limitations defense generally cannot be raised by way of a 12(b)(6) motion, [however,] an exception known as the 'Third Circuit Rule' permits this when the statute of limitations bar is apparent on the face of the complaint."  Mumma v. High-Spec, Inc., 400 F. App'x 629, 631 (3d Cir. 2010).  The statute of limitations bar is not apparent on the face of Plaintiff's SAC.  Plaintiff's SAC alleges both seemingly benign and malignant acts of aggression towards Plaintiff, starting in 2005—when the sexual relationship began—and continuing through the present.  As discussed in further detail below, the Court finds that Plaintiff alleged sufficient facts, within the statute of limitations period, to state a claim for hostile work environment, First Amendment Retaliation and First Amendment Intimate Association.

## III.    Claims for Civil Rights Violations under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the Constitution or the laws of the United States, "and that the alleged deprivation was committed by a person acting under color of state law."  Mosca v. Cole, 217 Fed. App'x 158, 163 (3d Cir. 2007).  Plaintiff has alleged violations of several rights secured by the Constitution and laws of the United States.  The Court will take each of these claims in turn and address whether they are sufficiently stated to withstand Defendants' Motions to Dismiss.

### A.  First Amendment: Right of Free Association – Doerr

"[T]he Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships."  Bd. of

Directors of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 544 (1987).  The Court of

Appeals for the Third Circuit has defined the scope of First Amendment protections to intimate

relationships:

> The right of intimate association involves an individual's right to enter into and maintain intimate or private relationships free of state intrusion. The types of relationships that give rise to this right may take various forms, but the Supreme Court has held that these relationships must be distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship. Family relationships are the paradigmatic form of protected intimate associations, as they by their nature involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.

Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh, 229 F.3d 435, 441–42 (3d Cir. 2000)

(emphasis added) (quoting 468 U.S. 609, at 620).

 "Protected intimate associations include familial relationships involving deep attachments

and commitments and the sharing of personal aspects of one's life."  Gardner v. Barry, No. 1:10-

CV-0527, 2010 U.S. Dist. LEXIS 124165, at *19 (M.D. Pa. Nov. 23, 2010); see also Roberts v.

United States Jaycees, 468 U.S. 609, 619-20 (1984).  Courts have even found that the right to date

is a protected intimate association.   See Gardner, 2010 U.S. Dist. LEXIS 124165 at *20; see also

Kicklighter v. Evans Cnty. Sch. Dist., 968 F. Supp. 712, 720 (S.D. Ga. 1997).  To state an

intimate association claim, Plaintiff must allege that Doerr's actions '"directly and substantially

interfered with' the intimate relationship."  Kost v. Baldwin, No. 3:16-2008, 2017 U.S. Dist.

LEXIS 163771, at *13 (M.D. Pa. Sep. 29, 2017) (quoting 485 U.S. 360, at 365).

 The SAC clearly alleges the type of intimate association protected by the Constitution—

i.e., a relationship that started with Plaintiff dating her husband, which has since evolved into

marriage. The more difficult inquiry is whether Doerr's alleged interference with this relationship amounted to a constitutional violation.

Viewing the above allegations in the light most favorable to Plaintiff, the Court finds that Doerr's alleged continued interference with Plaintiff's constitutionally-protected relationship forms a sufficient basis for an intimate association claim at this juncture. Plaintiff's SAC alleges that she started an intimate relationship with her now husband and that Doerr interfered with that relationship by levying hostile remarks towards Plaintiff and her husband.[3] Compl., at ¶ 33-34. Further, with Doerr's supervision and approval, Plaintiff's husband "became a target of harassment" at work. Id., at ¶ 34. Combined with the previous allegations of Doerr's unwanted sexual advances and social control of Plaintiff, the most reasonable inference drawn from these allegations is that Doerr levied this hostility to interfere with Plaintiff's marriage, which is a constitutionally-protected relationship.

Further, regarding the statute of limitations, the SAC alleges that Doerr expressed jealousy towards Plaintiff's relationship through 2017, which is within the limitations period. Id., at ¶ 33. Moreover, it is unclear from the SAC when the hostility levied against Plaintiff's husband—at Doerr's direction and supervision—began and ended. Because it cannot be clearly determined from the SAC that the statute of limitations precludes Plaintiff's claim, Plaintiff's First Amendment Intimate Association claim survives dismissal.

---

[3] Plaintiff's Response to Doerr's Motion to Dismiss (Doc. 34) argues that the constitutional violation is that Doerr's actions forced Plaintiff into an intimate relationship with him and prevented Plaintiff from choosing whom she enters intimate relationships. The Court need not reach a decision on whether preventing Plaintiff from engaging in intimate relationships receives the same protection under the First Amendment as already established intimate relationships. The Court finds that Plaintiff's relationship with her husband is the type of intimate association that is constitutionally protected.

*B. First Amendment: Retaliation – Doerr and Holman*

"A public employee's statement is protected by the First Amendment when, '(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made.'" Gorum v. Sessoms, 561 F.3d 179, 185 (3d Cir. 2009).

A public employee does not speak as a citizen when the statement is made pursuant to official duties. Id. (citing Garcetti, 547 U.S. at 421). Further, the Court of Appeals for the Third Circuit has held that, under certain circumstances, complaints of public harassment may constitute a matter of public concern. Montone v. City of Jersey City, 709 F.3d 181, 193 (3d Cir. 2013). But not all employee complaints about sexual harassment constitute a matter of public concern; examining the surrounding circumstances is necessary to make this determination. Id. In Azzaro v. Cty. of Allegheny, the Court of Appeals for the Third Circuit noted that conduct constitutes a matter of public concern when an employee brings to light a public official's potential wrongdoing, which would be relevant in evaluating a public official. 110 F.3d 968, 978 (3d Cir. 1997). In Azzaro, the plaintiff reported that an assistant to the Allegheny County Commissioner sexually harassed her during a meeting in which she pleaded with the assistant for her husband to keep his job. Id. Notably, the alleged sexual harassment concerned a single incident. Id.

Regarding the first element, Plaintiff's purportedly protected speech clearly was communicated outside the scope of her duties; therefore, she was speaking as a citizen. Regarding the second element, Plaintiff sufficiently pleaded that those communications were constitutionally-protected. Plaintiff alleged that she advised her supervisors of her intent to file a

charge of discrimination. Compl., at ¶ 63. Additionally, Plaintiff alleged that her charge indicated the manner in which Holman, Ritson and Doerr discriminated against her. Id., at 74.[4] Because the subject of Plaintiff's alleged communications concerned Doerr's inappropriate conduct, it concerned a publicly elected official's impropriety. This certainly constitutes a matter of public concern. Plaintiff has pleaded more than general workplace complaints that only concern herself. Morgan v. Covington Twp., 563 F. App'x 896 (3d Cir. 2014) (plaintiff must allege more than "retaliation arising out of the unusual circumstances of his individual employment dispute.").

Lastly, regarding the third element, Plaintiff sufficiently alleged retaliation in averring that Doerr and Holman put Plaintiff on a performance improvement plan. Compl., at ¶ 64. Moreover, the SAC clearly alleges that Doerr and Holman had no justification for these acts other than retaliation for Plaintiff exercising her First Amendment rights. Accordingly, Plaintiff's First Amendment Retaliation claim survives dismissal.

### C. Fourteenth Amendment: Equal Protection – Doerr

"Discrimination against a particular individual (*i.e.,* discrimination against a 'class of one') violates the Equal Protection Clause when it bears no rational relationship to any legitimate governmental interest." McCleester v. Mackel, No. 06-120J, 2008 U.S. Dist. LEXIS 27505, at *55 (W.D. Pa. Mar. 27, 2008) (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). Public employees, however, do not receive the same protection. "Because

---

[4] Regarding Exhibit 1 to Plaintiff's Motion to Strike (Doc. 40), the Court cannot consider an attachment from a separate filing with regards to a motion to dismiss. Regarding Exhibit C to Doerr's Reply (Doc. 38), the Court notes that the attached charge was submitted in April, while the Complaint states that Plaintiff intended to file a charge at the end of February. Compl., at ¶ 63. The Court cannot be sure that the April 18, 2016 charge is the charge relied upon in the SAC. Therefore, the Court does not consider it in its analysis.

'employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify,' a public employee cannot establish a violation of the Equal Protection Clause merely by showing that a personnel action taken against him or her was arbitrary or irrational." Mitchell v. Miller, 884 F. Supp. 2d 334, 353 (W.D. Pa. 2012) (citing Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 604-605 (2008)). Instead, public employees must show that the action taken against them was a result of their inclusion in a protected class. Id.

Regarding Plaintiff's gender discrimination claim, "[s]exual harassment by employees of a state agency constitutes sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and is actionable under § 1983." Azzaro, 1995 U.S. Dist. LEXIS 21474, at *21 (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990)). "Specifically, to prove sexual discrimination, a plaintiff must show that any disparate treatment was based upon gender." Id. (citing Andrews, 895 F.2d at 1478).

Plaintiff's gender discrimination claim fails to the extent it relies upon Doerr's discrete acts. Discrete adverse employment acts are individually actionable gender discrimination claims. Carter, 2009 U.S. Dist. LEXIS 37278, at *13-15. In Count II of the SAC, however, Plaintiff points to a variety of actions forming the basis of her hostile work environment claim. Arguably, in paragraphs 56 and 57 of the SAC, Plaintiff alleges that she suffered several adverse employment actions that would be individually actionable. But Plaintiff does not allege that Doerr was responsible for this conduct. Rather, Plaintiff passively states that she was subjected to certain adverse employment acts, but does not state who was responsible. The Court finds that Plaintiff has failed to allege that Doerr directly participated in an individual discrete act of gender discrimination occurring within the two-year statute of limitation period. Accordingly,

the Court dismisses Plaintiff's gender discrimination claim without prejudice, to the extent that Plaintiff claims that Doerr's discrete discriminatory acts form the basis of it.

Plaintiff, however, clearly has alleged that Doerr's continuous violations created a hostile work environment. "[P]roving the existence of a hostile work environment is a means of establishing an equal protection violation" and can form the basis of a gender discrimination claim. Pollock v. City of Phila., No. 06-4089, 2008 U.S. Dist. LEXIS 60764, at *25 (E.D. Pa. Aug. 7, 2008); Miles v. Pa. Dep't of Conservation & Nat. Res., Civil Action No. 1:08-cv-1561, 2009 U.S. Dist. LEXIS 15454, at *8 (M.D. Pa. Feb. 27, 2009). "Similar to gender-based discrimination claims, hostile work environment claims under the Equal Protection Clause follow the same framework established for Title VII hostile work environment claims." King v. City of New Kensington, Civil Action No. 06-1015, 2008 U.S. Dist. LEXIS 76485, at *61 (W.D. Pa. Sep. 30, 2008). "In order to prove a hostile work environment claim against an individual defendant, a plaintiff must show: (1) that . . . she suffered intentional discrimination because of [her gender]; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same [gender] in that position; and (5) a basis for personal liability." Pollock v. City of Phila., No. 06-4089, 2008 U.S. Dist. LEXIS 60764, at *22 (E.D. Pa. Aug. 7, 2008). Under the continuous violations theory, wrongful acts "can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." Mandel, 706 F. 3d at 165.

As an added note, courts within the Third Circuit have split on whether sexual assault[5] constitutes a discrete act or whether it can be aggregated under a continuous violations theory to meet the statute of limitations. Compare, Vandegrift v. City of Philadelphia, 228 F. Supp. 3d 464, 485 (E.D. Pa. 2017), with Onuffer v. Walker, No. 13-4208, 2014 U.S. Dist. LEXIS 95665, at *19 (E.D. Pa. July 11, 2014).

Even if the Court does not consider Plaintiff's and Doerr's alleged sexual relationship, Plaintiff's hostile work environment claim still is viable. Plaintiff alleged that after the sexual relationship concluded, Doerr, among other things, requested that Plaintiff film herself performing sexual acts. Additionally, Doerr forced unwelcome social interactions upon Plaintiff, including some interactions that constitute sexual harassment. These alleged incidents continued well into the statute of limitations period and are actions sufficiently connected to constitute a continuous violation. Further, the SAC is littered with allegations of varying degrees of sexual harassment that Doerr levied, which more than sufficiently alleges severe and pervasive discrimination that detrimentally affected Plaintiff. Thus, Plaintiff has adequately alleged that Doerr created a hostile work environment. Therefore, Plaintiff's gender discrimination claim survives dismissal.

### D. Fourteenth Amendment: Equal Protection – Holman

Plaintiff pleaded sufficient facts in her SAC to support a hostile work environment claim against Holman. Plaintiff's SAC alleges that Holman, her supervisor, directly participated in and contributed to creating a hostile work environment. See, e.g., Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988) (An individual cannot be held liable unless he caused or

---

[5] The Court takes no position on whether allegations, as stated in the SAC, amount to the legal definition of sexual assault. But Doerr's alleged unwelcome sexual conduct arguably could form the basis of a continuing violation claim or be considered a discrete act.

participated in an alleged constitutional deprivation.).  Specifically, Holman despairingly commented that, "The marriage was over,"[6] and that Plaintiff would have to sue Doerr to return to her previous position to which she was already entitled to return.  Compl., at ¶ 44. Additionally, Holman allegedly retaliated against Plaintiff after she filed a charge with the EEOC and concocted a fake policy to subvert her discrimination charge.  Id., at ¶ 64, 65.  Lastly, the SAC describes Holman's animus towards Plaintiff through several passing references.  Id., at ¶ 29, 30.  The SAC's allegations, taken in combination, sufficiently allege Holman's direct participation in creating a hostile work environment.

   *E.  Fourteenth Amendment: Procedural Due Process*

Lastly, Plaintiff has withdrawn her Procedural Due Process claim.  Accordingly, the Court dismisses Plaintiff's claim for Procedural Due Process with prejudice.

## IV.   <u>Qualified Immunity</u>

Government officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  <u>District of Columbia v. Wesby</u>, 138 S. Ct. 577, 589 (2018) (quoting <u>Reichle v. Howards</u>, 566 U.S. 658, 664 (2012)).  In order to be clearly established, the legal principal must be supported by then-existing precedent to the point that it is "settled law." <u>Id.</u> (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 228 (1991)).  Further, the legal principle must, with a high degree of specificity, "clearly prohibit the [judicial] officer's conduct in the particular circumstances before him."  <u>Id.</u> at 590.  Because it will clarify the Court's analysis, the Court will apply the two-step procedure for assessing qualified immunity described in <u>Saucier v. Katz</u>,

---

[6] The Complaint is ambiguous as to which "marriage" is being referred—*i.e.*, the purported sexual relationship between Doerr and Plaintiff or Plaintiff's actual marriage.  This distinction, however, is irrelevant to the Court's analysis.

533 U.S. 194 (2001).  See Pearson v. Callahan, 555 U.S. 223, 242 (2009) (receding from Saucier and holding that judges have discretion as to its application).

The first question in this analysis is: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right?"  Saucier, 533 U.S. at 201.  With the exception of Plaintiff's gender discrimination claim—for the reasons stated more fully above—Plaintiff has adequately alleged clearly established constitutional claims upon which relief may be granted.

Under the second step of the Saucier qualified immunity analysis, the Court asks "whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case."  Saucier, 533 U.S. at 201.  In this analysis, while the Court need not locate "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."  White v. Pauly, 137 S. Ct. 548, 551 (2017)).  But "clearly established law should not be defined at a high level of generality. . . . clearly established law must be particularized to the facts of the case."  Id., at 552 (internal quotation marks and citations omitted).

Supreme Court case law fails to resolve whether clearly established law may be determined through a circuit's precedents, a consensus of circuits or only through Supreme Court decisions.  Wesby, 138 S. Ct. at 591 n.8 ("We have not yet decided what precedents—other than our own—qualify as controlling authority for purposes of qualified immunity."); Taylor, 135 S. Ct. at 2044-45 (finding that the Supreme Court's decisions, a consensus of appellate cases, and the Third Circuit's decisions did not establish the right at issue—without deciding which of these tests was necessary.).

Accordingly, the Court will first examine the relevant Supreme Court precedents, then look to the consensus of circuits and finally to precedents within the Third Circuit to determine whether the Plaintiff's First Amendment claims and Plaintiff's Fourteenth Amendment claims receive qualified immunity.

1. *Qualified Immunity for First Amendment Intimate Association Claim.*

Regarding Plaintiff's First Amendment Intimate Association Claim, the Supreme Court has held that "the Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships." Bd. of Directors of Rotary Int'l, 481 U.S. at 544; see also Roberts v. United States Jaycees, 104 S. Ct. 3244, 3249 (1984). Yet, the Supreme Court of the United States has not delved into the specific factual scenario at hand: whether a public servant's conduct, which substantially and directly interferes with a marital relationship, sufficiently establishes a First Amendment violation.

Despite the lack of clear Supreme Court precedent delineating whether an official's conduct intending to disrupt a marriage violates the First Amendment, at least three circuits courts have answered this question. Christensen v. Cty. of Boone, 483 F.3d 454, 465 (7th Cir. 2007) (holding that conduct preventing couple from entering a non-marital intimate relationship could violate the right of intimate association); Griffin v. Strong, 983 F.2d 1544, 1549 (10th Cir. 1993) (recognizing that conduct infringing on marriage could give rise to an intimate association claim, but determining that the conduct at issue was not sufficiently severe to form a constitutional violation); Gaspers v. Ohio Dep't of Youth Servs., 648 F.3d 400, 416 (6th Cir. 2011) (finding that individual defendants were not entitled to qualified immunity because their conduct—which was levying adverse employment consequences to negatively impact a married couples' relationship—was a clearly established constitutional violation) . Upon review of the

above-mentioned cases, Doerr and Holman would be on notice that hostile conduct levied against a married couple could constitute a First Amendment violation.

Lastly, although the Court of Appeals for the Third Circuit has not delved into whether an official's adverse conduct, which was intended to disrupt a marriage, violates the First Amendment, the Court of Appeals has commented on the right's contours. Pi Lambda Phi Fraternity, Inc., 229 F.3d at 441 (discussing the types of intimate relationships that receive protection). Third Circuit precedent clearly indicates that small intimate familial relationships—*e.g.*, marriage—are protected from governmental intrusion. Id.

Upon review of the applicable precedents, Doerr would have known from United States Supreme Court precedent, as well as Third Circuit precedent, that Plaintiff has a right to enter a marriage and be free from governmental intrusion during it. Further, before Plaintiff began dating her now husband, at least two circuit court decisions clearly articulated that a government official's conduct, which interferes with a marriage, could constitute a First Amendment Intimate Association violation. Christensen, 483 F.3d at 465; Griffin, 983 F.2d at 1549. Thus, at the time of the violation, case law provided Doerr with sufficient notice that he could not interfere with Plaintiff's marriage. Therefore, the Court finds that the law was sufficiently established at the time of Doerr's conduct that his alleged conduct could constitute a violation of Plaintiff's First Amendment rights.

2. *Qualified Immunity for Plaintiff's First Amendment Retaliation Claims*.

United States Supreme Court precedent clearly establishes Plaintiff's First Amendment Retaliation claim. See Crawford-El v. Britton, 523 U.S. 574 (1998); Perry v. Sindermann, 408 U.S. 593, 597 (1972) ("For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable government benefit and even though the government may

deny him the benefit for any number of reasons,. . . [i]t may not deny a benefit to a person on a basis that infringes his constitutionally protected interests--especially his interest in freedom of speech.").

Further, this right is entrenched in the circuit courts and in the Third Circuit. See e.g., Wells v. City of Grosse Pointe Farms, 581 F. App'x 469, 474-75 (6th Cir. 2014) (recognizing right to be free from retaliation after criticizing police officers); Eisenhour v. Weber Cty., 744 F.3d 1220, 1228 (10th Cir. 2014) (noting that the First Amendment protects speech aimed at bringing to light judicial official's and judicial conduct commission's malfeasance); Mooney v. Lafayette Cty. Sch. Dist., 538 F. App'x 447, 452 (5th Cir. 2013) (observing that political speech is protected from retaliation under the First Amendment); Konits v. Valley Stream Cent. High Sch. Dist., 394 F.3d 121, 124 (2d Cir. 2005) ("Indeed, we have held repeatedly that when a public employee's speech regards the existence of discrimination in the workplace, such speech is a matter of public concern"); see also, Anderson v. Davila, 125 F.3d 148, 160, 37 V.I. 496 (3d Cir. 1997) ("The Supreme Court has explicitly held that an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of his First Amendment rights."); see also, McKee v. Hart, 436 F.3d 165, 170 (3d Cir.2006) (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir.2000).

Specifically, the Court of Appeals for the Third Circuit has established that the First Amendment protects speech aimed at alerting the public of gender discrimination in the workplace. Azzaro, 110 F.3d at 973-74 (3d Cir. 1997); Montone, 709 F.3d at 193. In the face of clear precedent, and a robust consensus of authority from the circuit courts, Doerr and Holman cannot argue that they did not have notice of the protection that the First Amendment affords.

In the context of First Amendment Retaliation claims, the Court's qualified immunity analysis does not end simply because the Court finds that this right is clearly established:

> The qualified immunity analysis requires a determination as to whether reasonable officials could believe that their conduct was not unlawful even if it was in fact unlawful. In the context of a First Amendment retaliation claim, that determination turns on an inquiry into whether officials reasonably could believe that their motivations were proper even when their motivations were in fact retaliatory.

Larsen v. Senate of the Commonwealth, 154 F.3d 82, 94 (3d Cir. 1998). (internal citations omitted). Based on the SAC's allegations, however, Doerr and Holman's motives for their retaliatory conduct were clearly improper.

3. *Qualified Immunity for Plaintiff's Fourteenth Amendment claims.*

Authority from other circuits and the Court of Appeals for the Third Circuit establishes that plaintiffs have a cause of action for gender based discrimination under § 1983 on the basis of sexual harassment. See e.g., Cox v. Sugg, 484 F.3d 1062, 1066 (8th Cir. 2007) ("[s]exual harassment by state actors violate[s] the Fourteenth Amendment and establishes a section 1983 action."); Hayut v. State Univ. of N.Y., 352 F.3d 733, 744 (2d Cir. 2003); Deborah O by & ex rel. Thomas O v. Lake Cent. Sch. Corp., No. 94-3804, 1995 U.S. App. LEXIS 19194, at *7 (7th Cir. July 21, 1995) ("Sexual harassment, as a general matter, is an actionable constitutional violation under § 1983."); Andrews, 895 F.2d at1478 (3d Cir. 1990). Doerr cannot claim ignorance to the obvious in the face of clear precedent; it has been clearly established for some time that judicial officials cannot sexually harass their employees.

Regarding Plaintiff's § 1983 hostile work environment claim, the Court of Appeals for the Third Circuit has not established whether a hostile work environment claim can be brought under § 1983. A robust consensus of authority, however, exists amongst the circuit courts.

> The numerous circuits that have addressed the question have all reached the same conclusion: proving the existence of a hostile work environment is a means of

establishing an equal protection violation." See, e.g., Rivera v. Puerto Rico Aqueduct and Sewers Auth., 331 F.3d 183, 191-92 (1st Cir. 2003) (stating that "the prima facie elements to establish liability are the same under [Title VII and § 1983]" when a plaintiff asserts a hostile work environment claim); Nieto v. Kapoor, 268 F.3d 1208, 1217-20 (10th Cir. 2001) (holding defendant liable for equal protection violation after plaintiff established existence of hostile work environment); McPhaul v. Bd. of Comm'rs of Madison County, 226 F.3d 558, 567 (7th Cir. 2000) ("Because section 1983 claims generally follow 'the contours of Title VII claims,' we will apply the same 'hostile environment' standard that is applied in Title VII cases."); Jemmott v. Coughlin, 85 F.3d 61, 67 (2d Cir. 1996) (citations omitted) ("According to Title VII law, which is utilized by courts considering § 1983 Equal Protection claims, a plaintiff must prove discrimination that was 'sufficiently severe or pervasive' to alter the conditions of his employment in order to prevail on a hostile work environment claim."); Beardsley v. Webb, 30 F.3d 524, 529 (4th Cir. 1994) (applying Title VII hostile work environment framework to equal protection claim based on sexual harassment); Boutros v. Canton Reg'l Transit Auth., 997 F.2d 198, 202-04 (6th Cir. 1993) (analyzing equal protection claim based on national origin under Title VII hostile work environment framework).

Pollock, 2008 U.S. Dist. LEXIS 60764, at *25. Doerr and Holman cannot claim that they did not have notice that creating a hostile work environment by sexually harassing an employee could constitute a § 1983 violation. The law is clearly established.

## II. **ORDER**

Defendants' Motions to Dismiss (Docs. 22 and 25) will be **GRANTED** in part and **DENIED** in part. Plaintiff's Fourteenth Amendment Gender Discrimination claim will be dismissed without prejudice to the extent that Plaintiff claims that Doerr's discrete discriminatory acts form the basis of it; Plaintiff's Procedural Due Process claim will be dismissed with prejudice. Plaintiff's deadline for filing an amended complaint, if Plaintiff wishes to do so, shall be **August 3, 2018**. This will be Plaintiff's final opportunity to amend her gender discrimination claim. If Plaintiff does not file an amended complaint by August 3, 2018, Plaintiff's gender discrimination claim, to the extent that Plaintiff claims Doerr's discrete act forms the basis of it, will be dismissed with prejudice. Defendants' Motions to Dismiss will be **DENIED** as to all remaining claims.

July 26, 2018                              s\Cathy Bissoon         
                                          Cathy Bissoon
                                          United States District Judge


cc (via ECF email notification):

All Counsel of Record